IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| COVERTECH FABRICATING, INC., | ) | Case No. 3:17-cv-196 |
|---|---|---|
| | ) | |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TVM BUILDING PRODUCTS, INC.; TVM | ) | |
| INDUSTRIES, INC.; TVM FOAM SYSTEMS, INC.; | ) | |
| TVM INSULATION, INC.; TVM SEALANTS, | ) | |
| INC.; TVM MANUFACTURING, INC.; TVM | ) | |
| HOLDINGS USA, INC.; TVM HOLDINGS, INC.; | ) | |
| TVM CANADA, INC.; MITEX INTERNATIONAL, | ) | |
| INC.; MITEX BUILDING PRODUCTS, LLC; | ) | |
| MITEX FOAM SYSTEMS, LLC; MITEX | ) | |
| MANUFACTURING, LLC; MITEX GROUP, INC.; | ) | |
| MICHAEL BOULDING; SEAN BOULDING; and | ) | |
| WILLIAM TROTTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

This Court is faced with the question of whether the automatic stay provision of the

Bankruptcy Code extends to the Non-Debtor Defendants in the above-captioned case. The issue

has been fully briefed (see ECF Nos. 24, 25, 26) and is ripe for disposition.

For the reasons described below, this Court finds that the automatic stay extends to the

Non-Debtor Defendants. Accordingly, this Court will **STAY** the above-captioned proceedings as

to all claims and all defendants.

1

## II. Background

On May 21, 2013, Covertech Fabricating, Inc. ("Covertech") sued TVM Building Products, Inc. ("TVM BP") for trademark infringement, unfair competition, and various related common law claims. Following a bench trial, this Court awarded Covertech $4,761,319 in damages. *See Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.,* 124 F. Supp. 3d 489 (W.D. Pa. 2015), *aff'd in part, vacated in part,* 855 F.3d 163 (3d Cir. 2017), and *aff'd in part, vacated in part,* 855 F.3d 163 (3d Cir. 2017). The Third Circuit affirmed-in-part, and remanded with instructions for this Court to enter an amended judgment that included statutory damages. *See Covertech Fabricating, Inc.,* 855 F.3d at 177. Accordingly, this Court entered an Amended Judgment on May 31, 2017. (ECF No. 1-7.)

The instant dispute arises from Covertech's failed attempts to collect on the judgment it received against TVM BP. On October 23, 2017, Covertech filed a nine (9) count Complaint in this Court. (ECF No. 1.) According to the Complaint, Michael Boulding, Sean Boulding, and William Trotter (the "Individual Defendants") orchestrated an elaborate scheme by which they transferred assets out of TVM BP into various shell-corporations (the "TVM Entities" and the "Mitex Entities") which they created for the purposes of enriching themselves and frustrating Covertech's attempts to collect on its judgment. For the purposes of the instant dispute, the counts in Covertech's Complaint can be organized into three groups: (1) violation of the Pennsylvania Uniform Fraudulent Transfers Act against the TVM Entities and the Individual Defendants (Count V); (2) successor liability/de facto merger against TVM BP and Mitex International (Count I), piercing the corporate veil/alter ego liability against Michael Boulding and TVM BP (Count II), piercing the corporate veil/alter ego liability against the TVM Entities (Count III), and piercing the corporate veil/alter ego liability against the Mitex Entities (Count IV); and (3) the civil RICO

2

claims against the Individual Defendants, TVM BP, Mitex International, and TVM Canada. (Counts VI-IX). (*See* ECF No. 1 at 33-51.)

On October 24, 2017, Covertech filed an Ex Parte Motion for a Preliminary Injunction and a Temporary Restraining Order. (ECF No. 3.) On October 26, 2017, this Court granted a Temporary Restraining Order, and scheduled a preliminary injunction hearing for November 8, 2017. (ECF No. 7.) On November 7—the day before the preliminary injunction hearing—TVM BP filed a Suggestion of Bankruptcy with this Court, informing the Court that on November 3, 2017, TVM BP voluntarily filed for Chapter 7 Bankruptcy in the Bankruptcy Court for the United States District Court for the Northern District of Texas. (ECF No. 15.) The Suggestion of Bankruptcy stated that the proceedings in this Court should be stayed as to TVM BP, under the automatic stay provisions of 11 U.S.C. § 362(a). (*Id.* at 1.) It did not extend the automatic stay to the Non-Debtor Defendants.

The preliminary injunction hearing was held before this Court on November 8, 2017. All counsel present[1] agreed that the question of whether the automatic stay applies to the Non-Debtor Defendants must be resolved before this Court rules on the merits of Covertech's Motion for a Preliminary Injunction. After hearing arguments from all sides on the issue of whether the automatic stay applied to the Non-Debtor Defendants, this Court extended the TRO as to all Defendants except TVM BP and William Trotter, and ordered the parties to brief the issue of whether the automatic stay applies to the additional Non-Debtor Defendants. (*See* ECF No. 19.)

The parties agree that the stay extends to Covertech's claims against TVM BP. Thus, the

---

[1] No counsel appeared for the TVM Entities at the preliminary injunction hearing on November 8.

3

sole issue is whether the claims against the Non-Debtor Defendants should also be stayed. As explained below, the resolution of this issues turns on whether the assets that Covertech seeks from the Non-Debtor Defendants are property of TVM BP's bankruptcy estate and, thus, subject to the automatic stay.

### III.    Discussion

Covertech argues that the automatic stay applies only to TVM BP and does not extend to the Non-Debtor Defendants. Covertech notes that only TVM BP filed for bankruptcy. (ECF No. 26 at 4.) Covertech asserts (1) that its claims against the Non-Debtor Defendants are completely independent of TVM BP's bankruptcy, (2) that Pennsylvania law defines the property of TVM BP's bankruptcy estate, and (3) that, under Pennsylvania law, Covertech's alter ego, successor liability, piercing the corporate veil, and RICO claims are not property of TVM BP's bankruptcy estate, and, thus, are not subject to the automatic stay. (*See* ECF No. 26 at 6-10.) Covertech also argues that the Non-Debtor Defendants are trying to "have it both ways." In litigation independent of the instant matter, Michael Boulding, speaking for Defendant Mitex International, stated under oath that TVM BP and Mitex International had no relationship whatsoever (*Id.* at 4; *see* ECF No. 26-4 at 3), but, here, the Non-Debtor Defendants—which, according to Covertech, are all controlled by Michael Boulding—contend that the are so closely related to TVM BP that their assets are subject to the automatic stay arising from TVM BP's bankruptcy.

The Non-Debtor Defendants argue that the automatic stay applies to all Defendants and all claims in the instant litigation. (*See* ECF No. 24 at 7.) The Non-Debtor Defendants assert that the automatic stay can extend beyond the entity that has filed for the protections of the Bankruptcy Code in "unusual circumstances," such as when the non-debtor defendant and the

4

debtor are so closely related that a judgment against the non-debtor will, in effect, be a judgment against the debtor. (*Id.*, citing *McCartney v. Integra Nat. Bank North*, 106 F. 3d 506, 509-510 (3d Cir. 1997)). According to the Non-Debtor Defendants, this is an "unusual circumstance" where extension of the automatic stay is required, because the overall gist of Covertech's Complaint is that the Michael Boulding used the Non-Debtor Defendants as repositories for funds that he fraudulently transferred out of TVM BP in an attempt to avoid the judgment that Covertech won against TVM BP. (*See* ECF No. 24 at 10-11.)

After reviewing the parties' filings,[2] this Court is persuaded by Defendant Trotter's arguments and finds that the automatic stay extends to the Non-Debtor Defendants. Accordingly, this Court will stay Covertech's claims in this Court pending resolution of the bankruptcy proceedings in the Northern District of Texas.

## A. The Bankruptcy Code Provides for an Automatic Stay

The filing of a bankruptcy petition stays any "judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(1)(a). The automatic stay extends to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). "'[A]ll legal and equitable interests of the debtor in property as of the commencement of the case are included in the bankruptcy estate." *In re Allentown Ambassadors, Inc.*, 361 B.R. 422, 436 (Bankr. E.D. Pa. 2007) (quoting 11 U.S.C. § 541(a)(1)). "The Third Circuit has 'emphasized Congress' intent to delineate in broad terms what constitutes

---

[2] Defendant Trotter filed a Brief Regarding the Applicability of Automatic Stay Pursuant to 11 U.S.C. § 362 as to All Defendants on Behalf of William Trotter (ECF No. 24), which Michael Boulding, Sean Boulding, and the Mitex Entities joined. (ECF No. 25.)

5

property of the estate.'" *In re Segen*, 445 B.R. 467, 468 (Bankr. E.D. Pa. 2010) (quoting *In re O'Dowd*, 233 F.3d 197, 202 (3d Cir.2000)).[3]

While § 362 of the Bankruptcy Code only provides for an automatic stay of actions against a "debtor," "[t]his prohibition... has been liberalized in a number of cases where courts have applied the automatic stay protection to nondebtor third parties." *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997). As the Third Circuit has recognized, "courts have extended the automatic stay to nonbankrupt codefendants in 'unusual circumstances.'" *Id.* (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). "[C]ourts have found 'unusual circumstances' where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *McCartney*, 106 F.3d at 510 (quoting *A.H. Robins Co.*, 788 F.2d at 999).

---

[3] Powerful public policy rationales underlie the Bankruptcy Code's automatic stay provision. "The automatic stay 'is designed to effect an immediate freeze of the *status quo* . . . and protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others.'" *In re Wingard*, 382 B.R. 892, 899 (Bankr. W.D. Pa. 2008) (quoting *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993)) (internal citations omitted). "The automatic stay is an important and powerful bankruptcy remedy in that it precludes certain post-petition actions of creditors, including the efforts of creditors to obtain property of the debtor or property of the bankruptcy estate." *Id.* (citing 11 U.S.C. §§ 362(a)(1), (2), (3), (4), (5), and (6)); *see Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (noting that "[t]he automatic stay was designed 'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'") (quoting *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F. 2d 444, 448 (3d Cir. 1982)).

**B. Circuit Courts Have Extended the Automatic Stay to Non-Debtor Third-Parties in Factual Circumstances Similar to Those Presently Facing the Court**

To this Court's knowledge, the Third Circuit has not addressed whether an automatic stay extends to non-debtor third-party defendants in factual circumstances similar to those presently before this Court. However, this Court is persuaded by two Fifth Circuit cases cited by Trotter, which feature factually similar circumstances to the case at bar.

In *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983), American National Bank of Austin ("American National") won a jury verdict against MortgageAmerica shortly before MortgageAmerica was forced into involuntary bankruptcy. *Id.* at 1268. Prior to MortgageAmerica's filing for bankruptcy, American National filed a state court case against Joe R. Long, the sole owner of all outstanding stock of RJC, Inc., which owned all the outstanding stock of MortgageAmerica. *Id.* American National's state court action alleged that because "Long deliberately stripped MortgageAmerica of assets in order to benefit himself while defrauding the company's creditors, he is personally liable to one of those creditors . . . for the [MortgageAmerica's] obligations." *Id.* The Fifth Circuit affirmed the bankruptcy court and district court's extension of the automatic stay from MortgageAmerica's bankruptcy to the state action against Long. *Id.* at 1277. In reaching this conclusion, the Fifth Circuit noted that "[a]ctions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with this estate and with the equitable distribution scheme dependent on it, and are therefore appropriately stayed under section 362(a)(3)." *Id.* at 1276.

The second Fifth Circuit case Trotter cites is *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1143 (5th Cir. 1987). In *S.I. Acquisition*, the plaintiff brought suit in state court against three

corporations and one individual defendant under alter ego and veil piercing theories. *Id.* at 1144-45. After one of the corporate defendants filed for bankruptcy, the plaintiff moved to sever the debtor defendant from its state court action. *Id.* at 1144. Subsequently, one of the other corporate defendants filed for bankruptcy. *Id.* Thus, the issue before the Fifth Circuit was "whether the prosecution of a state court suit that is premised solely upon the theory that the defendants therein are the controlling entities or persons of a chapter 11 debtor (and thus accountable for the debtor's debts) is automatically stayed as to all parties involved by section 362(a)(1) or (3) upon the filing of the debtor's bankruptcy petition." *Id.* at 1150. The Fifth Circuit "answer[ed] this question in the affirmative," *Id.* at 1151, holding that, under Texas law, an alter ego action belonged to the bankruptcy estate and, thus, was covered by the automatic stay. *Id.* at 1153.

Like the Fifth Circuit in *In re MortgageAmerica Corp.* and *S.I. Acquisition*, this Court finds that "unusual circumstances "in the instant case require extending the stay beyond the debtor to non-debtor third party entities. While Covertech's Complaint asserted counts of alter ego, veil piercing, successor liability, and civil RICO against various Non-Debtor Defendants, all of these allegations undeniably stem from TVM BP's allegedly fraudulent transfers of funds to the Non-Debtor Defendants at the hands of Michael Boulding who, according to the Complaint, dominates and controls TVM BP and all of the entities that allegedly received the fraudulently transferred funds. Thus, as in the Third Circuit's decision in *McCartney*, the close relationship between TVM BP and the Non-Debtor Defendants means that "a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *McCartney*, 106 F.3d at 510. Accordingly, "unusual circumstances" exist that require extending the automatic stay to the Non-Debtor Defendants. *Id.*

8

Furthermore, as explained below, because the Bankruptcy Code gives the trustee the power to avoid fraudulent transfers made by the debtor prior to filing for bankruptcy, the claims that Covertech asserts in the instant action belong to TVM BP's bankruptcy estate.

### C. Covertech's Claims Are the Property of TVM BP's Bankruptcy Estate

"The bankruptcy code provides trustees with the power to undo certain transactions entered into by debtors prior to filing bankruptcy which were designed to, or had the effect of, frustrating recovery by creditors." *In re Hill*, 342 B.R. 183, 195 (Bankr. D. N.J. 2006). Specifically, § 548(a)(1)(B) permits the trustee to:

> avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
>> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>>
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C.A. § 548. The trustee bears the burden of proof to establish that a fraudulent transfer occurred. *See, e.g., In re Dolata*, 306 B.R. 97, 117 (Bankr. W.D. Pa. 2004).

While Covertech asserts various theories of liability against the Non-Debtor Defendants, each claim derives from Covertech's underlying allegation that TVM BP fraudulently transferred assets to the Non-Debtor Defendants in an attempt to defraud its creditors. Indeed, the crux of Covertech's Complaint is that Michael Boulding engaged in an "elaborate scheme of transferring

9

money from one TVM Entity to another" in an attempt to enrich himself and evade Covertech's attempts to collect its judgment against TVM BP. (ECF No. 1 at ¶ 8.) Similarly, Covertech alleges that the Mitex Entities were created "using money that belonged to TVM BP and was transferred through mail and wire fraud," *id.* at ¶ 127, and contends that the Mitex Entities "are merely repositories for Michael Boulding's transfer of TVM BP assets from company to company depending on his needs." (*Id.* at ¶ 126.) Thus, Defendant Trotter observes, the common denominator for each of Covertech's claims against each of the Non-Debtor Defendants is the underlying fraudulent transfer of assets out of TVM BP to the other entities created and controlled by Michael Boulding. Accordingly, since each of Covertech's claims derives from the fraudulent transfer of funds from TVM BP to the Non-Debtor Defendants, Covertech's claims against the Non-Debtor Defendants are property of the bankruptcy estate.

The Court observes that in its Brief, Covertech acknowledges that its "fraudulent transfer claims (Count V) arguably could be asserted by the bankruptcy trustee." (ECF No. 26 at 2 n.2.) Based on this concession, Covertech "agrees to stay this Count of the Complaint as well as all of its claims against TVM BP." (*Id.*) While Covertech correctly observes that the fraudulent transfer count belongs to the bankruptcy trustee, Covertech fails to acknowledge that its other counts all rely on the central allegation that TVM BP fraudulently transferred assets. The conclusion that this Court draws from Covertech's central allegation that the Non-Debtor Defendant entities were created using funds fraudulently transferred from TVM BP is that the assets that Covertech seeks

to recover from those Non-Debtor Defendant entities are properly property of TVM BP's bankruptcy estate.[4]

This Court further rejects Covertech's contention that "there is no way in which proceeding with Covertech's Independent Claims as to the other parties will harm the debtor's bankruptcy estate." (ECF No. 26 at 6.) If, as Covertech alleges, Michael Boulding "had been commingling assets of TVM BP with other Defendants, and moving assets out of TVM BP for years, in an attempt to circumvent any efforts to collect debts it did and would eventually owe to creditors" (ECF No. 1 at ¶ 49), any funds transferred to the Non-Debtor Defendants were fraudulently transferred and, thus, belong to TVM BP's bankruptcy estate. Allowing Covertech to collect from the Non-Debtor Defendants would clearly be detrimental to TVM BP's other creditors because such a collection would place competing obligations on funds that are the property of TVM BP's bankruptcy estate. Moreover, allowing Covertech's claims to proceed would contravene one of the strong policy rationales behind the automatic stay provision of the Bankruptcy Code, i.e., to "protect[] creditors by preventing particular creditors from acting

---

[4] *See Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (holding that "[t]he jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include 'suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate,'" (quoting *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994)), and to those suits which may affect "'the allocation of property among creditors.'" (quoting *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1992)); *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) ("The automatic stay can apply to non-debtors . . . when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate")); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 94 (2d Cir. 2014) (enjoining state law claims against non-debtor co-conspirators and noting that "appellants' purported tort claims are, in essence, disguised fraudulent transfer actions, which belong exclusively to the Trustee.").

11

unilaterally to obtain payment from a debtor to the detriment of other creditors." *McCartney*, 106 F.3d at 509.

## IV. Conclusion

For the reasons stated above, this Court will **STAY** the above-captioned case pending resolution of the bankruptcy proceedings against TVM BP in the Northern District of Texas.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COVERTECH FABRICATING, INC., | ) | Case No. 3:17-cv-196 |
| | ) | |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TVM BUILDING PRODUCTS, INC.; TVM | ) | |
| INDUSTRIES, INC.; TVM FOAM SYSTEMS, INC.; | ) | |
| TVM INSULATION, INC.; TVM SEALANTS, | ) | |
| INC.; TVM MANUFACTURING, INC.; TVM | ) | |
| HOLDINGS USA, INC.; TVM HOLDINGS, INC.; | ) | |
| TVM CANADA, INC.; MITEX INTERNATIONAL, | ) | |
| INC.; MITEX BUILDING PRODUCTS, LLC; | ) | |
| MITEX FOAM SYSTEMS, LLC; MITEX | ) | |
| MANUFACTURING, LLC; MITEX GROUP, INC., | ) | |
| MICHAEL BOULDING, SEAN BOULDING, and | ) | |
| WILLIAM TROTTER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**NOW**, this 13th day of November, upon consideration of the arguments made at the November 8, 2017 preliminary injunction hearing and the briefings submitted by the parties, and in accordance with the foregoing memorandum opinion, **IT IS HEREBY ORDERED** that the above-captioned action is **STAYED** as to all claims and all defendants, pending resolution of TVM BP's bankruptcy proceedings in the Bankruptcy Court for the United States District Court for the Northern District of Texas.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE